PEOPLE *v.* DECKER.

MUNICIPAL CORPORATIONS—ORDINANCES—LICENSES — PLUMBERS —
    REGULATION—PERMITS—FEES.

> Sections 4 and 12 of Act No. 222, Pub. Acts 1901, does not
> authorize an ordinance empowering a city plumbing board
> to tax and collect a fee, the amount of which is dependent on
> the cost of new plumbing work done within the city, to be
> paid for the services of the board, as a condition precedent
> to the issuance of a permit for the work.

Exceptions before judgment from Kent; Perkins, J.
Submitted June 22, 1905. (Docket No. 168.) Decided
September 19, 1905.

William A. Decker was convicted of violating an ordi-
nance regulating plumbing and drainage work in the city
of Grand Rapids. Reversed and respondent discharged.

*Butterfield & Keeney,* for appellant.

*William B. Brown,* Prosecuting Attorney, for the
people.

BLAIR, J. This is a criminal prosecution for violation
of Act No. 222 of the Public Acts of 1901, the complaint
charging:

"That heretofore, to wit, on the 15th day of July, A.
D. 1904, at the city of Grand Rapids, in the county afore-
said, and for twelve days last immediately prior thereto,
one William A. Decker, he being then and there a regis-
tered master plumber in the city of Grand Rapids afore-
said, did then and there unlawfully install and put in a
part of the plumbing and draining system of a building
of Otto Thum, and upon the premises of said Otto Thum,
located at, to wit, southwest corner of Ottawa street
and Louis street, in said city of Grand Rapids, in violation
of section 4 and section 93 of the code of rules regulating
plumbing and drainage work in the city of Grand Rapids,

Michigan, formulated under the laws of the State of Michigan, by the board of examiners of plumbers of said city of Grand Rapids, and approved by the local board of health of said city of Grand Rapids, without first having received a permit, issued by the chief inspector of plumbing, allowing the installing of said plumbing and drainage work as aforesaid, and without first paying the fee, or any part of such fee, as provided in said section 93 and section 4 for the examination, and to procure the permit as provided in said section 93 and section 4, and without paying the fee as provided in said section 93 in order to procure a permit from said chief inspector of plumbing to allow said William A. Decker to install the plumbing and draining system in said building and on said premises as aforesaid; and the said William A. Decker did, at the time, place, and in the manner aforesaid, install a part of the plumbing and draining system aforesaid, contrary to the rules formulated as aforesaid and approved as aforesaid, said rules being in full force and effect, and regulating all plumbing and drainage work connected with the trade, calling, or business of journeyman plumber, employing plumber, or master plumber within the city of Grand Rapids aforesaid," etc.

Section 4, referred to in the complaint, is as follows:

"No plumbing or draining system, or part thereof, shall be installed in any building or upon any premises until plans and specifications for such work have been submitted to the chief inspector, approved in writing, and a permit issued by him for installing the same."

Section 93 is as follows:

"For the inspection of plumbing in existence, as to its being sanitary or unsanitary, and for the necessary orders or suggestions to make said plumbing sanitary, there shall be no fee or charge, that work, of necessity, being within the duties of the health department; but for the examination and permit for new work, and for material changes in work, there shall be charged a fee of two per cent. for the first five hundred dollars' worth of work, and one per cent. for all additional work proposed: *Provided, however*, That no fee shall be less than one dollar; said money to be deposited with the application for a permit to do the work, and the amount so collected to be

placed in the fund out of which the plumbing inspector's salary is paid."

The defendant is a master plumber who has been examined and was duly registered under the law, and by its terms authorized to practice his business as a plumber. On the 1st day of July, 1904, he made to the board of plumbers of the city the following application:

"GRAND RAPIDS, MICH., July 1, 1904.
"Mr. H. N. THOMPSON,
            "Plumbing Inspector,
                        "City.
"Kindly issue permit to install plumbing and sewage in block at southwest corner of Ottawa and Louis streets for Mr. Otto Thum, owner. Work consists of three conduct stacks, one closet with vent stack, roughing in for three closets, and cast-iron sewage to connect with tile sewer now in. This work will be started at once.
                        "Respectfully yours,
                        "WILLIAM A. DECKER."

No permit was issued upon this application. The defendant, having commenced the work, was served with a notice that he had violated the rules of the board in commencing the work without first paying the fee provided for in the rules of the board. The fact that this fee was not paid was the only ground for refusing the permit. No claim is made that the work was improperly performed, or that in any respect it did not conform to the rules of the plumbing board. The record shows that the plumbing inspector examined the work, and no complaint was ever made of the manner in which the work was done.

While the general character of the work was shown by the application, the inspector was informed that there was no contract determining how the work was to be done, how far the defendant was to do it, or what its material was to be. It was impossible that he could have known the cost at the time of the commencement of the work. The inspector himself says that he did not know how much the expense proposed would be, that the material for work of the kind varied so much that the application itself

would furnish no means of determining the expense, and that he saw and knew nothing that would enable him to determine that question. The whole matter was under the control of the owner of the block, under whose direction the work was to proceed. No determination of the amount of fees was made by the inspector, or by any officer of the board, nor could it have been made at that time, and no demand was ever made for them by the officers. As appears by the report of the plumbing department of the city, its only source of income was the amount received for permits. It also appears that, within the sum of $122.67, the amount received from these permits was sufficient to pay the expenses of the whole department, including as well its public work, for which no compensation was charged, as the work of looking after new buildings or alterations.

On the hearing no witnesses were sworn on the part of the defense, and on motion of the prosecuting attorney the court directed a verdict against the defendant of guilty. His reasons for doing this, as stated by himself, appear in his charge as follows:

"I do not intend, in anything that I may say at this time, to state my own conviction upon this question; but in view of the importance of the question involved, in view of the fact that for a number of years this license fee has been imposed, and that that is the system now in vogue in the health department in this city, that to change that system would, doubtless, create more or less of a disturbance in the affairs of that board, I feel it is necessary that the question be finally and definitely determined by the decision of the court of last resort. And therefore, gentlemen, in order that the question may be settled, I direct you to render a verdict of guilty in this case, and the clerk will take your verdict."

The inspector testified, with reference to the refusal to grant a permit to respondent, as follows:

"That application was put in on the 1st of July. It was an application to install a system of plumbing in that building—to get a permit for that purpose. That permit

was not given. The reason was, he refused to pay the fees for it. The fees are 2 per cent. up to the first $500, and 1 per cent. thereafter, of the amount of work put in."

Respondent contends that he was tried and convicted for a violation of the provisions of section 93, above quoted, and not for an infraction of section 4, and that the provisions of section 93 as to fees were not within the powers conferred upon the board by the act in question, and, if they were, such attempted grant of power was unconstitutional and of no effect. Counsel for the people insist that respondent could properly be convicted under section 93, but that, even if he could not, he could certainly be lawfully convicted under section 4 for failing to file plans and specifications with the chief inspector and procuring his written approval and permit before proceeding with the work.

We think it clearly appears, from the testimony of Inspector Thompson and the charge of the court above quoted, that the respondent was actually tried and convicted of a violation of section 93, and we shall, therefore, consider the case with reference to that section only. In our opinion the statute does not attempt to confer upon these local boards authority to require the payment of the fees provided for in section 93. On the contrary, the legislative intent is plainly manifested that such expenses shall be borne by the city at large. Section 12 of the statute in question (Act No. 222, Pub. Acts 1901) provides:

" Each of such boards of examiners shall have power to procure suitable quarters for the transaction of business, to provide the necessary furniture, books and stationery, and to employ a clerk whose duty it shall be to keep a detailed and accurate record of all acts and proceedings of such board. The board of estimates and the common council of every city in this State shall annually insert in their tax levy a sufficient sum to meet the expenditures incurred under the provisions of this act; and all expenses incurred by the several boards of examiners in the execution and performance of the duties imposed by this act,

including the per diem of the board of examiners and compensation of the inspector or inspectors of plumbing and drainage as fixed by the board, commissioner or department making their appointments shall be a charge on the respective cities, and shall be audited, levied, collected and paid in the same manner as other city charges are audited, levied, collected and paid "

Section 4 of the statute provides, among other things, that the boards of examiners shall have power—

"To formulate, with the approval of the local board of health of the city in which it shall act, a code of rules regulating all plumbing and drainage work connected therewith in such city, including the proper materials, and workmanship, and from time to time to add to, amend or alter the same; to charge and collect from each person applying for examination the sum of two dollars for each regular examination made by said board, and all money so collected shall be paid over by the board monthly to the treasurer of such city in which said board shall be appointed."

In view of the specific provision for collecting a fee of $2 for each regular examination made by the board, and the general provision for charging the respective cities with the expense incurred under the act and necessary for carrying out its provisions, it seems manifest to us that the legislature did not contemplate the fixing and collection of fees by the local boards to pay for services which it had already otherwise provided for.

In our view of the case, it is not necessary to consider the important constitutional questions raised and so ably presented in their briefs and oral arguments by counsel for the respective parties. Whether it was within the constitutional powers of the legislature to authorize such a regulation by these local boards or not, it is sufficient to say that they have not attempted to do so.

The judgment is reversed, and the respondent discharged.

McALVAY, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.